Ms. Anabel P. Mitchell Chairman Florida Parole and Probation Commission 1309 Winewood Boulevard Building 6 Tallahassee, Florida 32301
Dear Ms. Mitchell:
This is in response to your request for an opinion on substantially the following questions:
 1. AFTER A FINDING AT A PAROLE REVOCATION HEARING THAT A PAROLEE HAS VIOLATED THE CONDITIONS OF HIS PAROLE, MUST THE PAROLE AND PROBATION COMMISSION REVOKE THE ORIGINAL PAROLE ORDER BEFORE ORDERING THE PAROLEE PLACED IN A COMMUNITY CONTROL PROGRAM PURSUANT TO CH. 83-131, LAWS OF FLORIDA?
 2. AFTER FINDING THAT A PAROLEE HAS VIOLATED THE CONDITIONS OF HIS PAROLE, CAN THE PAROLE AND PROBATION COMMISSION PLACE THE PAROLEE IN A COMMUNITY CONTROL PROGRAM FOR A SPECIFIED PERIOD AND THEN PLACE HIM IN A LESS RESTRICTIVE REGIME "ON PAROLE UPON SUCH TERMS AND CONDITIONS AS THE COMMISSION SHALL THEN SPECIFY"?
 3. AFTER FINDING THAT A PAROLEE HAS VIOLATED THE CONDITIONS OF HIS PAROLE, CAN THE COMMISSION AMEND THE PAROLE CERTIFICATE TO REQUIRE AN EXTENDED PERIOD OF PAROLE AND NEW, MORE RESTRAINING PAROLE CONDITIONS?
 QUESTIONS ONE AND TWO
According to telephone conversations with the commission's legal staff, in question One the commission's primary concern is whether it must revoke the original release order and the conditions it contained before putting a parolee who has violated that agreement into a community control program. The commission wants to be able to keep the original parole agreement in force while the parolee is in the community control program so that any special conditions in the original agreement will continue to apply. With the second question the commission is concerned whether it can impose community control for a limited period, then later remove the parolee from that program and leave him free subject to the conditions of the original parole release order. Because these two questions are related they will be answered together.
"Community control" is a noncustodial alternative to incarceration that is more restrictive than traditional methods of post-conviction release such as probation or parole. See, Ch. 83-131, Laws of Florida. This act provides that the Parole and Probation Commission, after a finding at a hearing that a parolee has violated the conditions of his parole, shall revoke the parole and return the parolee to prison to serve the sentence theretofore imposed upon him, reinstate the original parole order, "order the placement of the parolee into a community control program as set forth in s. 948.03, or enter such other order as is proper." See, s 15, Ch. 83-131, Laws of Florida, amending s 947.23(6), F.S. If the commission decides to place the parolee in a community control program, it shall be guided by the procedures and requirements provided in Ch. 948, F.S., which apply to the courts regarding the development and implementation of community control. Section947.23(6)(c), F.S. 1983.
Chapter 83-131, Laws of Florida, also amended Ch. 948, F.S., to provide the courts with the authority to place a person into a community control program instead of ordering imprisonment or incarceration. Section 948.01(4), F.S., as amended by s 13, Ch. 83-131, provides that the court may place "the offender in a community control program upon such terms as the court may require." These terms may include, but are not limited to, rehabilitative restitution in money or in kind, curfew, revocation or suspension of the driver's license, community service, deprivation of nonessential activities or privileges, or other appropriate restraints on the offender's liberty. Section948.01(4)(a), F.S., as amended by s 13, Ch. 83-131. Section948.03(2), F.S., as amended by s 16, Ch. 83-131, further states that the court shall require intensive supervision and surveillance for offenders placed in community control programs; such supervision may include specified contact with the parole and probation officer, confinement to an agreed upon residence during nonworking hours or when not engaged in public service activities, or mandatory public service.
After the court determines the appropriate sanctions, it shall develop and order a community control plan which will contain the rules, requirements, conditions and programs designed to encourage noncriminal behavior and promote rehabilitation. Section948.01(4)(b), F.S., as amended by s 13, Ch. 83-131, Laws of Florida. On completion of the sanctions imposed in the community control plan before expiration of the term ordered by the court, the Department of Corrections may petition to discharge the offender from community control or to return the offender to a program of regular probation supervision. Section 948.01(7), F.S., as amended by s 13, Ch. 83-131. Further, the court may at any time cause an offender in community control to appear before it to be admonished or commended, and when satisfied that its actions are in the community's best interests, the court may discharge the offender from further supervision. Section 948.05, F.S., as amended by s 19, Ch. 83-131. Finally the court may rescind or modify at any time the terms and conditions of probation or community control. Section 948.03(4), F.S., as amended by s 16, Ch. 83-131, Laws of Florida.
All the sections cited in the last two preceding paragraphs appear to be part of the procedures and requirements in Ch. 948, F.S., which apply to the courts regarding the development and implementation of community control within the meaning of s947.23(6)(c), F.S., as amended by Ch. 83-131, Laws of Florida, and thus would apply to the Parole and Probation Commission.
It appears from these sections that the courts and the Parole and Probation Commission have wide latitude in developing and implementing community control programs. Cf., Bennett v. Florida Parole and Probation Commission, 422 So.2d 1016 (1 D.C.A.Fla., 1982) in which the court said the commission has broad discretion to carry out its designated duties; Melton v. Wainwright,363 So.2d 615 (1 D.C.A.Fla., 1978), in which the court said that the standard for review of a parole revocation is whether the commission has abused its discretion; but see, Brumit v. Wainwright, 290 So.2d 39 (Fla. 1974), in which the court said that the commission's discretion was not unlimited and it could not enter an order revoking parole effective at a future date. And cf., AGO 83-38.
It further appears that the Legislature regards inmates in community control to be "parolees." For example, in ss947.23(6)(a) and (b), as amended, and in s 948.06(3), F.S., as amended by s 20, Ch. 83-131, there are specific references to "parolees in community control programs." Moreover, the Legislature did not provide that the original parole release order was to be revoked when a parolee was ordered into a community control program — revocation only occurs when the parolee is recommitted to prison. See, s 947.23(6)(a) and (b), F.S. 1983. However, the precise status of the original parole order is unclear. The Legislature has given little specific direction about what should become of it or its legal effect once the commission finds that a parole violation has occurred and determines to place a parole violator into a community control program.
However, some indication can be gathered from the language of s947.23(6). Legislative intent is first to be ascertained from a statute's language, see, e.g., State ex rel. Yaegar v. Rose,114 So. 373 (Fla. 1927); State ex rel. Davis v. Knight, 124 So. 461
(Fla. 1929); State v. Williams, 343 So.2d 35 (Fla. 1977), and generally words in a statute should be given their plain and ordinary meaning, see, e.g., Tatzel v. State, 356 So.2d 787
(Fla. 1978); Graham v. State, 362 So.2d 924 (Fla. 1978); State v. Stewart, 374 So.2d 1381 (Fla. 1979). Subsections 947.23(6)(a) and (b) both specifically state that the commission may "reinstate" the original parole order after finding that the order has been violated. The word "reinstate" is ordinarily defined as "to place again (as in possession or in a former position) . . . to restore to a previous effective state." Webster's New Collegiate Dictionary 967 (Rev. ed. 1979). The word is defined by Black's Law Dictionary 1452 (Rev. 4th ed. 1968) to mean "to reinstall; to reestablish; to place again in a former state, condition or office; to restore to a state or position from which the object or person had been removed." Thus, it appears that the Legislature contemplated that when a parolee violates his parole he has forfeited his right to it under its original conditions, and that the parole order with those conditions is forfeited or suspended upon the commission's finding of a violation. Compare, State v. Horne, 42 So. 388
(Fla. 1906), in which the court said that the violation of one of the conditions of a conditional pardon voided the pardon. For a discussion of the similarities between parole and conditional pardons, an early form of parole, see, Turner v. Wainwright,379 So.2d 148 (1 D.C.A.Fla., 1980). And see, Marsh v. Garwood,65 So.2d 15 (Fla. 1953). Because the commission must decide to reinstate the suspended original parole order for it to have any further effect, in my opinion an order placing a parolee into a community control program would supersede the original parole order, replacing it with the terms and conditions of a new parole order.
However, I see nothing in Ch. 83-131, Laws of Florida, or the Florida Statutes, as amended, that prevents the commission from incorporating in an order placing a parolee into a community control program any of the conditions from the original parole order which are compatible with Ch. 948, F.S., as amended. Since community control is intended to be more restrictive, it could reasonably include special conditions imposed in normal parole. See, s 948.01(4)(a), as amended, which provides that a court, and thus the commission, may order "other appropriate restraints on the offender's liberty"; s 948.03, F.S. 1983 (specifying the permissive terms and conditions that may be included as a part of community control); and Rule 23-21.165, F.A.C. (the commission's rule regarding standard parole conditions); cf., Todd v. Florida Parole and Probation Commission,410 So.2d 584 (1 D.C.A.Fla., 1982); AGO 83-38. Furthermore I find no statutory inhibitions that would bar the commission from setting a fixed period of very close supervision under community control that could be relaxed later. The courts appear to have that authority in implementing community control; s 948.03(4), as amended by Ch. 83-131, specifically gives the courts the authority to modify or rescind community control orders; see also, ss948.01(7), 948.05, 948.06; and s 947.23(6)(c), F.S. 1983, operates to vest the same power in the commission.
Therefore, in my opinion the commission's order placing a parole violator in community control supersedes and replaces the original parole order. The commission does not have to formally revoke the original release order because it is forfeited or suspended, subject to reinstatement, on the finding a parole violation took place. However, it appears that the commission could adopt conditions from the original parole order compatible with ss948.01(4), 948.03 and 948.06, F.S., as amended, in its new order placing the parolee into a community control program. Further, close supervision in a community control program could be ordered for a fixed period which the commission could modify and relax in the future.
QUESTION THREE
This question goes to the issue of the degree of flexibility the Parole and Probation Commission has in dealing with parole violators. As previously noted, s 947.23, F.S., as amended by Ch. 83-131, Laws of Florida, sets out four measures the commission can take after it makes a finding at a hearing that a parolee has violated the conditions of his parole. The commission can:
 1. revoke the parole order and recommit the parolee to prison to serve the remainder of his sentence.
2. place the parolee in a community control program.
3. reinstate the original parole order.
4. "enter such other order as is proper."
The commission suggests that the language "such other order as is proper" gives it the authority to amend a parole order to extend the parole period or to impose new, more strict parole conditions following a parole revocation hearing. I will assume for the purposes of this opinion that all due process requirements have been met, that the parolee has had a hearing, and that the commission has duly found he has violated parole conditions. The state cannot arbitrarily and summarily revoke parole once it is granted. Morrissey v. Brewer, 408 U.S. 471 (1972), and Parker v. Cook, 642 F.2d 865 (5th Cir. 1981). And thus it appears to me that the state may not arbitrarily and summarily alter parole conditions either.
The commission has only the authority granted by statute, Owens v. State, 316 So.2d 537 (Fla. 1975), Turner v. Wainwright, supra. The language "such other order as is proper" appears to give the commission the statutory authority to enter a new parole order granting parole upon new or different conditions. Such a new parole order would be an "other order as is deemed proper" within s 947.23(6)(a) and (b), F.S. 1983. It would appear to be within the commission's discretion what those conditions should be. See, Bennett v. Florida Parole and Probation Commission, supra; Todd v. Florida Parole and Probation Commission, supra. Cf., Melton v. Wainwright, supra; but also see, Brumit v. Wainwright, supra. Compare, State ex rel. Bailey v. Mayo,65 So.2d 721 (Fla. 1953) and State v. Horne, supra, in which the court said that the pardon board may impose on a conditional pardon any conditions that are not illegal, immoral, or impossible to perform. It does not appear, however, that the statutory language gives the commission the authority to amend existing orders, only to issue new ones. Therefore, in my opinion, upon the finding that a parolee has violated the conditions of his parole, the commission may enter a new parole order containing new or different conditions of parole that are more restrictive than those in the original order, including extending the parole period within and not to exceed statutorily prescribed limits. See, s947.24, F.S., which provides the maximum period of parole.
This conclusion appears to conform with the original legislative intent behind the predecessor of s 947.23, F.S. That section, s 17, Ch. 20519, 1941, Laws of Florida, originally provided that upon a finding a parolee had violated his parole conditions the commission:
 shall enter an order thereon rescinding said parole and returning such person to prison to serve the sentence theretofore imposed upon him, or reinstating the original order of parole, or shall enter such other order as it may deem proper. (e.s.)
The two extremes between which the commission could exercise its discretion were clearly marked: revocation or reinstatement. If the Legislature had intended these to be the only options, it would not have provided the commission the authority to enter other orders it deemed proper. Statutory language is not assumed to be superfluous; a statute must be construed so as to give meaning to all its words and phrases. Terrinoni v. Westward Ho!,418 So.2d 1143 (1 D.C.A.Fla., 1982). Words in a statute should not be construed as surplusage if reasonable construction which will give them some force and meaning is possible. Pinellas County v. Wolley, 189 So.2d 217 (2 D.C.A. Fla., 1966). Thus it seems clear that the language "such other order as it may deem proper" was originally intended to give the commission an option in the middle ground between the extremes of revocation and reinstatement, to allow for a new order modifying release conditions in light of a violation that needed correction but was not serious enough to require incarceration. A different conclusion would render the words meaningless and without force. It does not appear to me that the 1983 Legislature meant to change the intent behind the wording with Ch. 83-131, but rather simply to add another option for the commission to consider following a revocation hearing.
Therefore, it would appear to be within the commission's authority, following a parole revocation hearing with a finding that a parole violation occurred, to extend the period of parole within and not to exceed the statutorily prescribed limits, or to impose other more restrictive conditions by issuing a new parole order. If the parolee cannot agree to these new conditions, he would not be entitled to further release. Cf., Todd v. Florida Parole and Probation Commission, supra.
In conclusion, when the commission duly finds after a revocation hearing that a parolee has violated the conditions of his parole, the original release order is forfeited or suspended and unless reinstated, superseded and replaced by a subsequent order placing the parolee into a community control program. However, the commission may incorporate conditions compatible with ss948.01(4), 948.03 and 948.06, F.S. 1983, from the original parole order into its new order placing the parolee into a community control program. The commission may order a parole violator into a community control program for a fixed period to be followed by a period of less restrictive supervision. Upon duly finding that a parolee has violated the conditions of his parole, the commission may enter a new parole order containing different and more restrictive conditions than those in the original parole order, including extension of the parole period within and not to exceed the statutorily prescribed limits.
Sincerely,
Jim Smith, Attorney General
Prepared by: Jason Vail, Assistant Attorney General